UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DAMIEN SHONTELL HEWLETT,

      Plaintiff,

v.  Case No. 22-C-433

ROBERT WEINMAN, RANDALL HEPP,
EMILY PROPSEN, SGT. JOSEPH FALKE, and
WAYNE BAUER,

      Defendants.

---

# SCREENING ORDER

---

Plaintiff Damien Shontell Hewlett, who is currently serving a state prison sentence at Waupun Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. This matter comes before the Court on Hewlett's motion for leave to proceed without prepaying the full filing fee and to screen the complaint.

## MOTION TO PROCEED WITHOUT PREPAYING THE FILING FEE

Hewlett has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). Hewlett has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint, as required under 28 U.S.C. §1915(a)(2), and has been assessed and paid an initial partial filing fee of $43.51. Hewlett's motion for leave to proceed without prepaying the filing fee will be granted.

## SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, and dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555 (internal quotations omitted).

2

## ALLEGATIONS OF THE COMPLAINT

According to Hewlett, Defendants are denying him "reasonable safety" by leaving him "exposed by force to inmates who ha[ve] contracted the Omicron vari[a]nt of Covid-19." Hewlett explains that security staff has chosen to "not adequately quarantine Covid-19 positive inmates to the southwest cell-hall which was completely vacant at the time and could have been utilized to house the infected inmates away from [him] to ensure that [he] was provided with 'reasonable safety' that [he is] entitled to." He explains that by leaving infected inmates in general population there is no effective way to quarantine them to prevent the spread of the virus. He notes that cells have open face bars and "are clearly not 6-feet apart to allow [them] any social distancing." Hewlett acknowledges that he has not contracted Covid, but he asserts that Defendants' refusal to move infected inmates to another unit puts him at a serious risk of contracting it. Dkt. No. 1 at 2-4.

## THE COURT'S ANALYSIS

Under the Eighth Amendment, prison officials must not only provide "humane conditions of confinement," but they must also ensure that "reasonable measures" are taken to guarantee inmate safety and prevent harm. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). "To state a claim premised on prison officials' failure to protect him from harm, [a plaintiff] must allege that the defendants knew of and disregarded an 'excessive risk' to his 'health and safety.'" *Id*. (citing Farmer, 511 U.S. at 837).

Hewlett focuses on Defendants' decision to keep infected inmates in the general population unit rather than moving them to a vacant unit to quarantine. Hewlett does not clarify if inmates are required to quarantine in their cells while infected, but he raises concerns over cells with "open face bars" that are not six feet apart, suggesting that he believes that even if infected inmates are

3

Case 1:22-cv-00433-WCG   Filed 04/28/22   Page 3 of 7   Document 7

quarantined in their cells, he is at an excessive risk of contracting COVID. Such an inference is not reasonable. While the doors to the cells may have open bars, there are walls separating adjacent cells, so the fact that the cells are fewer than six feet apart is meaningless. And, while it is unclear how wide the hallway is, an infected inmate in his cell is almost certainly more than six feet away from an inmate who is in his cell across the hall.

Further, Hewlett focuses exclusively on Defendants' refusal to relocate inmates without acknowledging other efforts that Defendants may have made to minimize the spread, such as offering vaccines, testing when symptoms are present, and providing and/or requiring facemasks when inmates are outside their cells. It is not appropriate to focus on only one aspect of Defendants' response when evaluating whether they were deliberately indifferent to the risk Hewlett faced. *See, e.g., Mays v. Dart*, 974 F.3d 810, 819-20 (7th Cir. 2020). And, while Hewlett suggests that relocating inmates to another unit is a simple solution, he fails to consider challenges that would accompany such a decision, such as cost, staffing demands, and security concerns. As the Supreme Court has acknowledged, "the problems that arise in the day-to-day operation of a corrections facility are not susceptible to easy solutions. Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).

Finally, the Centers for Disease Control and Prevention (CDC) has published interim guidance on managing Covid in correctional facilities that administrators and agencies may adapt to the specific needs of their facilities. https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html#Medicalisolation. It should also be noted that the CDC has concluded that "Omicron infection generally causes less

severe disease than infection with prior variants." While the potential of serious illness remains, healthy people who contract the Omicron variant are far less likely to require hospitalization or significant treatment, especially if they have received a vaccination. While the CDC continues to suggest medical isolation and quarantine for infected inmates, it also notes that its "guidance should be adapted based on an individual facility's physical space, staffing, population, operations, history of SARS-CoV-2 outbreaks, community factors, and other resources and conditions." *Id.* Therefore, while Defendants' decision not to open a vacant unit of the prison may not be ideal from Hewlett's perspective, the Court must acknowledge that "the challenges of managing [the pandemic] in a correctional setting are astronomical." *Mayfield v. Peissig*, No. 20-cv-269, 2020 WL 3414757, at *2 (W.D. Wis. June 22, 2020) (citations omitted). In short, the complaint fails to state a claim because the allegations do not suggest that the conditions of Hewlett's confinement are inhumane or that Defendants are acting with deliberate indifference to a significant risk of harm to his health or safety.

The Seventh Circuit has recently emphasized that the norm is to afford a plaintiff at least one opportunity to amend his complaint. *See Zimmerman v. Bornick*, 25 F.4th 491, 494 (7th Cir. 2022). Accordingly, if Hewlett so chooses, he may file an amended complaint by **May 27, 2022**. He is advised that an amended complaint replaces the prior complaint and must be complete in itself without reference to the original complaint. *See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1056–57 (7th Cir. 1998). If an amended complaint is received, the Court will screen it as required by 28 U.S.C. §1915A. If an amended complaint is not received, the Court will dismiss this action based on Hewlett's failure to state a claim in his original complaint. The Court will enclose an amended complaint form along with this decision. Hewlett must use the form. If he needs more space, he may attach up to five additional pages.

**IT IS THEREFORE ORDERED** that Hewlett's motion for leave to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that on or before **May 27, 2022**, Hewlett may file an amended complaint. If Hewlett does not file an amended complaint by the deadline, the Court will dismiss this action based on Hewlett's failure to state a claim in his original complaint. The clerk's office is directed to mail Hewlett an amended complaint form along with this decision.

**IT IS FURTHER ORDERED** that the agency having custody of Hewlett shall collect from his institution trust account the $306.49 balance of the filing fee by collecting monthly payments from Hewlett's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Hewlett is transferred to another institution, the transferring institution shall forward a copy of this Order along with Hewlett's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where Hewlett is located.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

Honorable William C. Griesbach
c/o Office of the Clerk
United States District Court
Eastern District of Wisconsin
125 S. Jefferson Street, Suite 102
Green Bay, WI 54301

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Hewlett is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Green Bay, Wisconsin this __28th__ day of April, 2022.

s/ William C. Griesbach
William C. Griesbach
United States District Judge